Dear Chief Liner:
You advise this office that you are the fire chief of Terrebonne Parish Fire District #10. In addition to yourself, you state that the fire district employs five (5) paid firefighters, and is further staffed by fifteen (15) volunteer firefighters. You first ask if a career firefighter employed by the fire district must be paid for responding to emergencies during "off duty" hours.
In response to your first question, our answer is a qualified "yes". In general, cornpensable hours of work include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. See 29 CFR § 553.221
(b)[1] and 29 USC § 203(g)[2] . *Page 2 
However, if in responding to an emergency a firefighter performs work beyond the number of hours established as his "work period", the issue of overtime compensation becomes relevant.
R.S. 33:1994, the Louisiana statute governing the minimum wages and maximum hours of firefighters, in pertinent part provides:
 1994. Maximum Hours
 A. Overtime compensation for firefighters covered by this Subpart in cities having a population of thirteen thousand or more and that *Page 3 
of all parish and fire protection district paid firefighters shall be governed by the provisions of the federal Fair Labor Standards Act, as implemented in 29 CFR Part 553. . . . .(emphasis added).
R.S. 33:1994(A) mandates that overtime compensation of "all parish and fire protection district paid firefighters" shall be governed by the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, et seq. The issue of overtime compensation is initially addressed by the FLSA at 29 USC § 207(a), and provides no employee shall work longer than forty hours a week unless he receives compensation at a rate of not less than one and one-half times the regular rate at which he is employed.
An employer (here, the fire district) is allowed to take advantage of certain exemptions from the normal forty-hour overtime schedule established by the FLSA. Our analysis is predicated on the assumption that the fire district employees are "employee[s] in fire protection activities" as defined by federal law in 29 U.S.C. § 203(y):
 "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker who —
 (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
 (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.
Note that state law similarly defines "fireman" as "all persons employed or engaged full-time by municipalities or municipal fire departments, parishes or parish fire departments, or fire protection districts for firefighting or fire prevention duties and services . . ." See R.S.33:1991 (A)(1).[3] *Page 4 
 EXEMPTIONS FROM THE PAYMENT OF OVERTIME TO FIREFIGHTERS
The following is a review of some of the federal exemptions from overtime made available to a firefighter's employer. First,29 USC 213(b)(20) provides a complete exemption from the overtime requirements of 29 USC 207 for public employees engaged in fire activities for workweeks in which the agency has fewer than five employees employed in such activities.[4] Individuals who are not considered "employees" for purposes of the FLSA by virtue of section29 USC § 203(e) of the Act (including persons who are "volunteers" within the meaning of 29 CFR § 553.101[5]) are not counted in determining whether 29 USC § 213(b)(20) exemption applies. If this exemption is applicable to your fire district, the district would be relieved of liability for overtime compensation which might otherwise be due a firefighter responding to an emergency during "off duty" hours.
Second, 29 USC § 207(k)[6] provides a partial exemption for those public employers too large for the complete exemption in29 USC § 213(b)(20). "This *Page 5 
exemption recognizes that firefighters often are on duty twenty-four hours a day, and therefore the normal standard of a forty-hour workweek is not appropriate". See Employment Law § 4:8 (3d ed.), Rothstein, Craver, Schroeder, and Shoben, FLSA-Public Employees.
Rather, 29 USC § 207(k) requires employers to pay firefighters overtime on the basis of the number of hours worked in a "work period." A public employer is allowed to determine a firefighter's "work period", where that work period is 7 to 28 days in length. If the firefighter's work period is 7 days, the employer must pay overtime for any hours worked in excess of 53. If the work period is 28 days, the employer must pay overtime for hours worked in excess of 212 within that 28 day period. A schedule sets out the employer's liability for overtime compensation for work periods that fall within these two parameters. See29 CFR § 553.230(c) and R.S. 33:1994(A).[7] *Page 6 
A third exemption is contained in 29 USC § 207 (p)(1).[8] This exemption allows public employers to exclude from the computation of hours worked special detail work performed for a separate and independent employer by the public employer's fire protection employees, as long as this work is at the employee's option.
Further, 29 USC § 207 (p)(2)[9] also permits public employees, at their option, to engage in occasional or sporadic part-time employment for the same employer but in a different capacity, without having the hours worked on the occasional job count toward calculation of overtime in the regular job. Finally, 29 USC § 207 (p)(3) permits firefighters to trade shifts with other firefighters, and those hours will be excluded from the calculation of overtime.[10]
 VOLUNTEER FIREFIGHTERS
Your second question is whether a career firefighter employed by the fire district may serve as a volunteer firefighter during his off-duty hours either in Terrebonne Parish or another parish, and whether he is owed compensation for that service in either instance. *Page 7 
In general, an employer is not required to compensate those employees who volunteer their services. State law exempts volunteer firefighters from the minimum wage and overtime compensation requirements of R.S.33:1994, as R.S. 33:1998 states that "the provisions of this Sub-part do not apply to voluntary unpaid members of fire departments".
Federal law provides that bona fide volunteer firefighters serving state and local government are not covered by the FLSA minimum wage and overtime provisions. Specifically, 29 USC § 203(e)(4) of the FLSA and29 CFR §§ 553.101 (footnote 5, supra) and 553.103[11] reflect that an individual is a volunteer, and not an employee of a public agency who is entitled to compensation, when the individual meets the following criteria:
 1. Performs hours of service for a public agency for civic, charitable or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered. Although a volunteer can receive no compensation, a volunteer can be paid expenses, reasonable benefits or a nominal fee to perform such services;
 2. Offers services freely and without pressure or coercion, direct or implied, from an employer; and *Page 8 
 3. Is not otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.
A firefighter cannot volunteer as a firefighter for the same public agency. See 29 USC § 203(e)(4)(A)[12] and 29 CFR § 553.103(b) at footnote 11; see also FLSA2004-15, an opinion issued by the Wage and Hour Division of the U.S. Department of Labor, in which the agency stated "allowing paid employees to perform the same type of services for their employer on an uncompensated `volunteer' basis if they choose to do so would in effect allow employees to waive their rights to compensation under the FLSA"). Rather, such time is considered compensable hours worked for the fire district and would have to be counted when computing total hours worked for purposes of overtime. See also FLSA2006-28, copy attached.
In contrast, under the FLSA an employee of a public agency does not lose his volunteer status where he volunteers to perform a different type of service for the same public agency that employs him. For example, see FLSA2004-19, where the Wage and Hour Division determined that a paid Fire Captain could volunteer as a Chaplain for the same fire department. ("It is clear after reviewing the job descriptions for Fire Captain and Chaplain [which] you provided with your letter and the [regulatory] treatment of these occupational categories that a Fire Captain and Chaplain are not providing the same or similar services. Therefore, assuming the other two criteria are met for establishing that an individual is a volunteer, the [fire department] may allow the Fire Captain to volunteer without compensation as a Chaplain without violating the FLSA.") See also FLSA2006-38, copy attached.
While 29 USC § 203(e)(4)(A)(ii) of the FLSA does not permit an individual to volunteer to perform the same or identical services for his employer, he may volunteer to perform the same or identical services for another public agency, even if the two agencies have entered into a mutual aid agreement. See 29 USC § 203(e)(4)(B)[13]. *Page 10 
Thus, the response to your second question is not necessarily determined by which parish a paid firefighter volunteers in; rather, the question to be answered is: does he provide volunteer fire protection services to a public agency not his employer? The federal regulations state "Whether two agencies of the same State or local government constitute the same public agency can only be determined on a case-by-case basis. One factor that would support a conclusion that two agencies are separate is whether they are treated separately for statistical purposes in the Census of Governments issued by the Bureau of the Census, U.S. Department of Commerce". See 29 CFR § 553.102(b); (emphasis added).
While the foregoing is a general discussion of those state and federal provisions governing the subject matter of your inquiry, note that it is the policy of this office to decline to give opinions on the application of federal law. However, be advised that such opinions (a number of which are cited herein) are routinely issued by the U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division. You may obtain an official opinion letter addressing our questions from the U.S. Department of Labor, Employment Standards Administration, Wage and Hour Division, Frances Perking Building, 200 Constitution Avenue, NW, Washington, D.S. 20210 (1-877-889-5627).
Further, you will also find current opinion letters on the U.S. Department of Labor website. The link ishttp://www.dol.gov/esa/whd/opinion/opinion.htm.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:___________________________
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL
 KLK:arg *Page 1 
 ATTACHMENT
 October 18, 2004
 FLSA2004-15
Dear Name,*
This is in response to your inquiry on behalf of Name* County Volunteer Fire and Emergency Medical Services Association (the Association) in Name*. The Association currently provides all emergency medical service (EMS) to Name* County. Some of the volunteer companies in the Association would like to augment their staff by hiring their own volunteer members as part-time, paid personnel.Name* stated that allowing companies to hire their own personnel, who are already familiar with the equipment, territory, and patients, would be the most efficient way to increase staffing levels. Based on advice provided by two attorneys whom Name* contacted, he questioned whether the companies could include volunteer members as part of their paid staff without violating the Fair Labor Standards Act (FLSA).
Name* provided additional information regarding the Association and volunteer companies in a conversation with a member of my staff. He advised that the Association compiles and enforces standards for twelve volunteer companies in Name* County. Each of these companies is an independent, non-profit, private corporation with a Board of Directors chosen from the volunteer members. The Association is proposing that a non-profit foundation be established to hire and distribute part-time EMS employees to the companies and that the foundation be reimbursed for wages by the companies.
There is no exclusion in the FLSA for private non-profit organizations. Employees of non-profit organizations are individually covered under the FLSA if, in the performance of their duties, they are engaged in interstate commerce or in the production of goods or materials for interstate commerce. In determining whether employees are engaged in interstate commerce for purposes of the FLSA, "the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce." Walling v. Jacksonville Paper Co., 317 U.S. 564, 567 (1943).
EMS employees would be covered by the FLSA as they respond to emergencies on state roads and interstate highways over which commerce between the states flows, and thus help remove obstructions so as to enable commerce to move freely. This fact satisfies the "interstate commerce" prerequisite for FLSA jurisdiction. Benson v. Universal Ambulance Service, 675 F.2d 783, 786 (6th] Cir. 1982). See also Wirtz v. A-1 Ambulance Service, Inc., 299 F. Supp. 197, 201 (E.D. Ark. 1969) (ambulance emergency crews who respond to accidents on city streets, state highways, and interstate highway systems are engaged in commerce within the meaning of the FLSA).
In addition, to the extent that Name* County EMS employees regularly perform their work in connection with other "instrumentalities" of commerce, including railroad rights-of-way, waterways, and the interstate METRO passenger commuter lines, they would be considered to be engaged in interstate commerce within the meaning and coverage of the FLSA. Name* County EMS employees would be considered to be engaged in interstate commerce under the FLSA because they cross state lines to respond to emergencies, transport patients, receive training and education, and the volunteer companies and their employees are subject to the mutual aid arrangements that exist with other states.
In circumstances where individuals who are regular employees of religious, charitable, or non-profit organizations donate services as volunteers to such organizations but in a different employment capacity, the time so spent is not considered compensable under the FLSA because the Wage and Hour Division will not claim that an employee/employer relationship exists for that different employment capacity. For example, office employees of the Association or one of its volunteer companies may volunteer to provide EMS during off-duty hours as an act of charity. On the other hand, such a regular office employee may not volunteer uncompensated to handle office work arising from a special fund drive or other operations of the Association or one if its volunteer companies.
Thus, individuals who are EMS volunteers could not work some shifts for pay for their employer and continue to work some shifts on a "volunteer" basis. In such cases, all hours worked on all shifts would have to be combined and compensated for FLSA purposes. *Page 2 
Even where there is no evidence of coercion, allowing paid employees to perform the same type of services for their employer on an uncompensated "volunteer" basis if they choose to do so would in effect allow employees to waive their rights to compensation under the FLSA. The Supreme Court has held that an employee may not waive his or her rights to compensation due under the FLSA. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697
(1945). The Court observed that "while in individual cases, hardship may result, the restriction will ensure to the benefit of the general class of employees in whose interest the law is passed, and so to that of the community at large (citations and internal quotations omitted)." Id. at 713. Similarly, in Barrentine v. Arkansas-Best Freight System, 450 U.S. 728
(1981), the Court held that a labor organization may not negotiate a contract provision that waives employees' statutory rights under the FLSA.
We have previously issued opinion letters relating to paid career fire fighters who wanted to volunteer additional time in the same capacity but to a different nonprofit entity. As we noted in a November 27, 2001 letter, a copy of which is attached hereto, an employee of one entity (in that case a public agency) may provide volunteer services to a separate and independent non-profit corporation. See 29 U.S.C. § 203(e)(4)(A). As we understand Name* description of the Association's plans to create a foundation that will coordinate hiring and distribution of paid EMS employees among the twelve volunteer companies (including collecting reimbursement from the volunteer companies), a significant question is raised whether the employees would be providing both paid and volunteer services to the same entity, which, as previously explained, is not permitted under the FLSA.
If we are to provide a more definitive answer to this particular question, we require further information on the relationship involving the Association, the proposed foundation, and the volunteer companies, including their overall organizational structure and operational control. Factors relevant in determining whether there is a de facto single entity include whether the organizations are separate and independent legal entities with their own by-laws and boards of directors controlling their decisions; who establishes the licensing and certification standards; who schedules the employees' shifts and determines rates and methods of compensation; who controls the employees' duty assignments and provides supervision for all aspects of the work; how employees are disciplined; whether the volunteer companies impose additional requirements related to the training or duties of their members; whether the organizations engage in separate or joint hiring decisions; whether volunteers are paid to work some shifts for their volunteer company; and whether there is evidence, as the court stated in Benshoff v. City of Virginia Beach, 180 F.3d 136, 149 (4th Cir. 1999), that "a sham" private volunteer corporation [was] placed between an employee and his employer to avoid the compensation provisions of the Act."
If the Association would like to provide us with additional information related to these factors, Name* or another representative of the Association should feel free to contact Michael Ginley at (202) 693-0745. We hope that you find the above information helpful in addressing the concerns raised by Name*. If you have questions or need additional information, please do not hesitate to contact us.
 Sincerely,
 Alfred B. Robinson, Jr.
 Acting Administrator
 Attachment
* The actual name(s) was removed to preserve privacy. *Page 3 
 ATTACHMENT FLSA2006-28
August 7, 2006
Dear Name*:
I am writing in reply to your Association's letter requesting guidance under the Fair Labor Standards Act (FLSA) on numerous hypothetical questions concerning "same type of services," "same public agency," and "nominal fee," as applied to individuals volunteering for, or employed by, a public agency.
The FLSA recognizes the generosity and public benefits of volunteering, and does not seek to pose unnecessary obstacles to bonafide volunteer efforts for charitable and public purposes. In this spirit, in enacting the 1985 FLSA Amendments, Congress sought to ensure that true volunteer activities are neither impeded nor discouraged. Congress, however, also wanted to minimize the potential for abuse or manipulation of the FLSA's minimum wage and overtime requirements in "volunteer" situations.
Section 3(e)(4)(A) of the FLSA and 29 C.F.R. §§ 553.101 and 553.103
(copies enclosed) indicate that an individual is a volunteer, not an employee of a public agency, when the individual meets the following criteria:
 1. Performs hours of service for a public agency for civic, charitable or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered. Although a volunteer can receive no compensation, a volunteer can be paid expenses, reasonable benefits or a nominal fee to perform such services;
 2. Offers services freely and without pressure or coercion, direct or implied, from an employer; and
 3. Is not otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.
Please be assured that this Administration fully supports volunteerism and is committed to working with organizations like yours to ensure that citizens are able to volunteer freely their services for charitable and public purposes consistent with the law.
Your letter posits factual circumstances that test whether volunteer status is jeopardized. The first series of questions — questions 1 through 9 — concerns payments that a public agency may provide a volunteer. We will address these questions under Scenario 1, below. The second *Page 4 
series of questions — questions 11, 14 and 15 — goes to the issue of providing the "same type of services" to the "same public agency."[1]
We will address these questions under Scenario 2, below.
Scenario 1
1. An individual serves as a volunteer firefighter for County A.
2. County A provides the volunteer with some monetary payment (or tax relief) calculated on a yearly, monthly, shift, or on-call basis.
3. The payment (or tax relief) varies based on factors such as the amount of time spent on the activities, length of service, number of calls, and number of shifts, but is not linked to expenses incurred by the volunteer.
Each question asks whether the particular payment negates volunteer status. Section 3(e)(4)(A)(i) and the implementing regulations at29 C.F.R. § 553.106 (copy enclosed) provide that a volunteer may only be paid expenses, reasonable benefits, or a nominal fee, or any combination thereof, without losing volunteer status. Examples of permissible expenses or benefit payments are described as a payment for expenses, such as dry cleaning; an allowance for a requirement, such as a uniform; reimbursement for an out-of-pocket expense, such as transportation; a payment to provide materials, such as supplies; or a payment for benefits, such as participation in group insurance plans. See29 C.F.R. § 553.106(a)-(d).
Section 553.106(e) discusses what constitutes a nominal fee and the various factors to consider in determining whether a stipend is nominal. In the preamble to this provision of the regulation, the Department stated, "whether a specific amount is `nominal' depends on the economic realities of the situation and that no guidelines on specific amounts applicable to all (or even most) possible situations can be provided."See 52 Fed. Reg. 2012, at 2021 (Jan. 16, 1987) (copy enclosed).
While the statute and the implementing regulations do not define what constitutes a "nominal fee," the regulations provide guidance for determining whether a fee is nominal and permissible. If a fee is not nominal, then the individual does not qualify as a volunteer and is considered an employee who is covered by the FLSA minimum wage and overtime provisions. The factors to examine in making a determination of whether an amount is nominal include, but are not limited to: (1) the distance traveled and the time or effort required of a volunteer; (2) the availability — limited or unlimited — of a volunteer to provide services; and (3) the basis — as needed or throughout the year — on which a volunteer agrees to perform services. See 29 C.F.R. § 553.106(e). These factors focus upon whether the fee is actually more analogous to a payment for services or recompense for something performed and, hence, not nominal Thus, *Page 5 
to the extent that payments are tied to productivity (e.g., payment of hourly wages for services rendered), are similar to "piece rates" or are comparable to "production bonuses," there is a greater likelihood that such fees are not nominal. However, as noted in the preamble to section 553.106(e), almost 30 percent of all volunteer firefighters are paid a small fee for each fire call to which they respond, and the rule was not intended to invalidate that model. See 52 Fed. Reg. 2012, at 2021. Moreover, consistent with the discussion of factors to be considered (e.g., distance traveled, time and effort expended, around-the-clock versus limited availability, throughout the year versus upon request), compensation "per call" or other similar bases may be acceptable so long as they may fairly be characterized as tied to the volunteer's sacrifice rather than productivity-based compensation. Accordingly, nothing in the statutory language would directly preclude the payment of nominal per call or even per shift fees to volunteer firefighters as section 553.106(e) specifically provides that a nominal fee can be paid on a "per call" or similar basis for volunteer firefighters.
Please also see Wage and Hour Opinion Letter FLSA2005-51 (Nov. 10, 2005) (copy enclosed) that contains a recent discussion of the Department's consideration of what payment constitutes a nominal fee for determining an individual's volunteer status. That opinion letter expounds upon the "economic realities" test in the context of school systems and those volunteering by assisting with extra-curricular activities, such as coaching sports or sponsoring various clubs. Specifically, this letter states that when a public agency employee volunteers as a coach or extracurricular advisor, the Department will presume the fee paid is nominal as long as the fee does not exceed 20 percent of what the public agency would otherwise pay to hire a full-time coach or extracurricular advisor for the same services. This 20 percent rule is derived from the FLSA and implementing regulations. See Wage and Hour Opinion Letter FLSA2005-51 ("The FLSA and the implementing regulations use a 20 percent test to assess whether something is insubstantial with regard to prohibited driving on public roadways by employees who are 17 years of age."). A willingness to volunteer for 20 percent of the prevailing wage for the job is also a likely indication of the spirit of volunteerism contemplated by the 1985 amendments to the FLSA. We believe this interpretation of "nominal fee" applies equally in the context of firefighters.
Finally, the regulations instruct that any nominal fees must be considered in the context of any other benefits or expenses paid and the economic reality of the particular situation. Indeed, section 553.106(f) sets forth the "economic realities" test, which specifically provides that the determination of whether the expenses, benefits or fees would preclude an individual from qualifying as a volunteer under the FLSA must be made by examining the total amount of payments in the context of the economic realities of a particular situation. As your letter is silent on whether any other expenses and/or benefits are paid, the Department assumes there are no other benefits or expenses beyond the payments described in the questions.
The probative facts as we see them for each hypothetical question are set out below:
Q.1 The volunteer is paid $ 1,200 per year regardless of the number of shifts or amount of time spent responding to calls. On average the volunteer staffs a minimum of 24 shifts and/or spends a minimum of 60 hours responding to calls annually. *Page 6 
 Q.2 The volunteer is paid $100.00 per month regardless of the number of shifts or amount of time spent responding to calls. On average the volunteer staffs a minimum of 4 shifts and/or spends a minimum of 8 hours responding to calls monthly.
Q.3 The volunteer is paid $100.00 per month so long as the volunteer staffs a minimum of 2 shifts and/or spends a minimum of 5 hours responding to calls during the month. Additional payments of $25.00 are made for each additional shift over 4 during the month and/or for every 2.5 hours spent responding to calls exceeding 12 hours during the month.
Q.4 The volunteer is paid $25.00 (or $30.00 or $40.00) for each four-hour block of time regardless of the actual amount of time below four hours spent at the station house or responding to calls.
Q.5 The volunteer is paid $20.00 for each shift regardless of the length of the shift or the time spent responding to calls. On average, the volunteer works a 6 hour shift and/or spends 2 hours per shift responding to calls.
Q.6 The volunteer is paid $25.00 if the volunteer staffs a shift of at least 8 hours and/or spends 2.5 hours responding to calls. An additional $15.00 per shift is paid if the shift exceeds 8 hours or responds to calls over 5 hours during a single shift.
Q.7 An individual serves as a volunteer firefighter in Indiana. Indiana Code 36-8-12 defines "nominal" as an annual payment of not more than twenty thousand dollars ($20,000). The volunteer is paid an annual fee of $15,000. On average, the volunteer spends at least 3,000 hours per year waiting and responding to calls.[2]
 Q.8 The volunteer is paid a stipend of $20.00 per shift regardless of the length of the shift or the amount of time spent responding to calls during the shift. For every consecutive year of volunteer service in which the volunteer has staffed not less than 12 shifts per year, the volunteer is granted an additional stipend of $1.00 per shift regardless of the time spent responding to calls.
Q.9 The volunteer is provided with $ 1,500.00 personal property tax relief annually during the term of their volunteer service.
These questions, with the exception of question 9, specify payments to be made to the volunteer per shift, month, or year and the average number of shifts, calls, and/or hours worked by the volunteer. In some instances, additional payments are made if additional time above the required minimum is spent on shift or responding to calls. In other instances, payment increases depending on the number of years volunteered. Assuming there are no other payments or benefits provided and no other facts that bear on the question (out-of-pocket expenses, travel costs, uniform maintenance, etc.), these payments may qualify as nominal fees under § 553.106. *Page 7 
Generally, a key factor in determining if a payment is "substitute for compensation" or "tied to productivity" is "whether the amount of the fee varies as the particular individual spends more or less time engaged in the volunteer activities." Wage and Hour Opinion Letter FLSA2005-51. If the amount varies, it may be indicative of a substitute for compensation or tied to productivity and therefore not nominal. See id.; see also 29
C.F.R. § 553.106(e). However, as noted above, there is a specific allowance for volunteer firefighters to be paid on a "per call" or similar basis consistent with certain factors denoting the relative sacrifice of the volunteer. See 29 C.F.R. § 553.106(e). Due to this specific allowance, and assuming there are no other facts showing that the payments in your hypothetical situations are a substitute for compensation or tied to productivity, it still must be determined if the payments are nominal amounts.
Applying the recent interpretation of "nominal fee" in Wage and Hour Opinion Letter FLSA2005-51, generally an amount not exceeding 20 percent of the total compensation that the employer would pay to employ a full-time firefighter for performing comparable services would be deemed nominal. Thus, in questions 1 through 6, a nominal fee could be 20 percent or less of the total compensation that County A would pay for the same services. Assuming the fee is determined to be nominal, it is less relevant whether it is paid on an annual, monthly or daily basis.[3]
As was stated in Wage and Hour Opinion Letter FLSA2005-51, the market information necessary to complete this good faith determination is generally within your members' knowledge and control. Any full-time firefighter a particular fire department has on its payroll would be a good benchmark for this calculation. Absent such information, a fire department or similar entity may look to information from neighboring jurisdictions, the state, or ultimately, the nation, including data from the Department of Labor, Bureau of Labor Statistics. Thus, for example, if a volunteer staffs three shifts during a month, a nominal fee should not exceed 20 percent of what it would cost to employ a full-time firefighter to staff a period to cover the equivalent of the three shifts.
Question 7 involves $15,000 per year for volunteers who on average spend at least 3,000 hours waiting for or responding to calls. Assuming the payment does not vary depending on the productivity of the volunteer or whether the volunteer spends more or less time on volunteer activities, the payment of $15,000 might qualify as "nominal" under the 20 percent rule if County A would otherwise need to pay $75,000 or more to hire a full-time firefighter to perform the same services. However, it is unlikely that 3,000 hours of service (50+ hours per week) is "volunteering" rather than employment. Indeed, without knowing additional facts and circumstances about the economic realities of the locality, a payment of $15,000 for 3,000 hours of volunteer services arguably constitutes compensation for a full-time job rather than a "nominal fee" for volunteering.
Similarly, Question 8 involves increased payment for every year the volunteer staffs a requisite number of shifts. Without additional facts, we are unable to say definitively whether this increased payment represents compensation via a seniority or productivity system based on *Page 8 
services rendered, and is thus not permitted, or, applying the test described above, is a "nominal fee" for volunteerism.
Question 9, involving tax relief of $1,500 on personal property taxes, would appear to constitute a permissible "reasonable benefit" and thus need not be evaluated as a "nominal fee." Provision of such a benefit will not, in and of itself, preclude bona fide volunteer status.
Scenario 2
You have also posed questions similar to those raised in your letter of September 16, 2002, which we responded to in April 2003, that concern whether the volunteer services are for the same public agency and/or are the same type of services the volunteer is employed by that public agency to provide. See Wage and Hour Opinion Letter FLSA2003-2 (Apr. 14, 2003) (copy enclosed). Questions 11, 14, and 15 all concern these issues. We assume for each Question that the person is providing volunteer services for civic, charitable or humanitarian purposes and without any expectation or receipt of compensation and the services are volunteered without any pressure or coercion from an employer. You posit the following facts:
1. The individual in question is employed by County A, a public agency.
2. The individual seeks to volunteer either for County A, a public agency, or a joint powers board funded by both City A and County A. In order to determine whether a person is a bona fide volunteer under section 3(e) of the FLSA (copy enclosed), if the volunteer is employed by a public agency it is necessary to assess whether the volunteer is employed by the same agency for whom the services are provided and the services provided are the same services the volunteer is employed to provide. As noted in Wage and Hour Opinion Letter FLSA2003-2, if an individual is not employed by the same public agency (what you call the "who is an employer" question), then it is not necessary to examine the nature of the services provided (what you call the "what are the same type of services" question). Similarly, if the individual does not perform the same type of services for the public agency, there is no need to examine the relationship of the agency receiving the individual's volunteer services to the individual's employer.
As stated in our prior opinion letter, whether two entities of a local government constitute the same public agency can only be determined on a case-by-case basis. Among the factors to be considered is whether the Census of Governments issued by the Bureau of the Census, U.S. Department of Commerce, treats the two agencies separately for statistical purposes. See 29 C.F.R. § 553.102 (copy enclosed). In addition to the Census of Governments, the attached Wage and Hour Opinion Letter FLSA2002-3 (June 7, 2002) provides a framework for making such a determination and identifies factors that are relevant to the determination. As indicated in Wage and Hour Opinion Letter FLSA2003-2, there are a number of relevant factors to consider, such as: whether the two agencies have separate payroll and retirement systems; whether they both have the authority to sue and be sued in their own names; whether they have separate hiring and other employment practices; and how they are treated under state law. See also Wage and Hour Opinion Letter FLSA2006-13 (Apr. 28, 2006) (City firefighters may *Page 9 
volunteer to County Fire Protection District that has separately elected Board; separate funding sources; separate payroll, benefits and retirement systems; can levy taxes and exercise eminent domain; can sue and be sued; and is treated separately by the Census) (copy enclosed).
If those other factors demonstrate that the agencies should be treated as separate entities, or if the Census of Governments treats the agencies described in questions 11, 14 and 15 as separate agencies, then our opinion is that they are not the same employer and an employee of one could volunteer to provide services of any nature for the other public agency.
Even if the public agency for which the person seeks to volunteer is the volunteer's employer, volunteer services may still be provided so long as the services are not the same type of services the volunteer is employed to provide. For instance, a firefighter may not volunteer as a firefighter for the same public agency. On the other hand, an employee of the city parks department may offer to volunteer as a firefighter, or a police officer may volunteer to referee in a basketball league sponsored by his employing city. See 29 C.F.R. § 553.103.
Much like the determination of "same public agency," whether the service the volunteer seeks to provide is the "same type of services" the individual is employed to perform can only be determined after "consideration of all the facts and circumstances in a particular case[.]" See 29 C.F.R. § 553.103(a). The regulations define "same type of services" to mean similar or identical services. Id. Among the facts considered is how the volunteered services and the services that the volunteer is employed to provide are classified by the three digit categories of occupations in the Dictionary of Occupational Titles.
Further, in addition to the Dictionary of Occupational Titles, one must also consider whether the volunteer services are "closely related to the actual duties performed by or responsibilities assigned to the employee."Id. An additional source of information about occupational categories is found in O*NET, available at http://www.doleta.gov/programs/onet/. The O*NET system, created and maintained by the Department of Labor's Employment and Training Administration, is a unique, powerful source for continually updated information on skill requirements and occupational characteristics.
With these qualifications in mind, we will now address in turn each question under Scenario 2.
Q.11 An individual is employed as a mechanic by the County A Parks Department. He also volunteers as a firefighter for the County Fire and Rescue Department, a joint powers board funded by County A and City A. He is granted paid leave while responding to calls as a volunteer.
A.11 This scenario resembles that outlined in your September 16, 2002, letter which the Department answered in Wage and Hour Opinion Letter FLSA2003-2. As discussed more fully therein, the determination of whether the mechanic is a bona fide volunteer turns in part on whether the County A Parks Department and the County A Fire and Rescue Department are the same public agency. We refer you to the discussion of the factors to consider in making this determination as outlined in Wage and Hour Opinion Letter FLSA2003-2.
Assuming the County A Parks Department and the Fire and Rescue Department are separate agencies, the fact that the Parks Department allowed its employee to cease his usual duties to *Page 10 
respond to fire calls and paid the employee for his normal work hours spent on such calls, would not make the mechanic an employee of the Fire and Rescue Department. However, such special leave would be compensable hours worked for the Parks Department and would have to be counted when computing total hours worked for the Parks Department for purposes of overtime. If the employee substitutes paid personal leave earned with the Parks Department — which the employee may use as the employee sees fit, including for time spent as a volunteer firefighter — for the time off spent in volunteer activities, then the individual's status as a bona fide volunteer to the Fire and Rescue Department is not jeopardized and the hours would not be compensable hours worked for the Parks Department for overtime purposes.
Conversely, as explained in Wage and Hour Opinion Letter FLSA2003-2, if the County Parks Department and the Fire and Rescue Department are part of the same public agency, and the County grants special leave for the hours the employee works as a firefighter without requiring him to use his personal accrued leave (which would be considered compensable hours worked for the County as discussed above), then the County employs him as both a mechanic and as a firefighter. In essence, because the County releases him from his normal mechanic duties and shift only if he spends the specified time performing alternative firefighting duties and pays him wages for the time worked, he is employed by the County as both a full-time mechanic and as a part-time firefighter. Therefore, such time would be compensable hours worked for the County Parks Department and would have to be counted when computing total hours worked for purposes of overtime. Moreover, he would not be able to serve additional hours as a "volunteer" firefighter for the County because of the statutory prohibition against an employee volunteering to his own agency to perform the same type of services he is employed to perform. However, even if the Park Department and Fire and Rescue Department are not separate agencies, if the employee substitutes paid personal leave earned — which the employee may use as the employee sees fit, including for time spent as a volunteer firefighter — for the time off spent in volunteer activities that are not the "same type of service," then the individual's status as a bona fide volunteer is not jeopardized and the hours would not be compensable hours worked for the Parks Department for overtime purposes.
Q.14 Firefighter, cross-trained and licensed as an EMT/paramedic, is employed by County A Fire and Rescue Department. The Fire and Rescue Department is not licensed to nor does it provide advanced life support, although it does respond to medical emergencies, accidents, and fires as first responders. The County A Department of Emergency Medical Services is licensed and required to provide advanced life support services as first responders. Firefighter serves as a volunteer EMT/Paramedic for the County A Department of Emergency Medical Services.
A.14 Similar to question 11, the determination of whether the firefighter, who is cross-trained and licensed as an EMT/Paramedic, is a bona fide volunteer turns in part on whether the County A Fire and Rescue Department and the County A Department of Emergency Medical Services are the same public agency. Again, we refer you to the discussion of this question in Wage and Hour Opinion Letter FLSA2003-2. Generally, "the government of a political subdivision, e.g., county, city, etc., with all of its departments and agencies, constitutes a single employer under the Act." Field Operations Handbook § 10c11 (a) (copy enclosed). Although somewhat limited, it appears likely that the regulations provide that "[p]ublic safety employees taking on any kind of security or safety function within the same local government are never *Page 11 
considered to be employed in a different capacity." 29 C.F.R. § 553.30(c)(3) (copy enclosed). This is based on the 1985 legislative history instructing the Department to interpret the phrase working in a different capacity "in the strictest sense" with regard to public safety employees. See House Report No. 99-391, October 24, 1985, p. 25; Wage and Hour Opinion Letters FLSA2004-26NA (Oct. 29, 2004) and FLSA2004-25NA (Oct. 22, 2004) (copies enclosed). Therefore, we have previously concluded that an individual employed as a fire marshal could not volunteer as a firefighter for the same employer (Wage and Hour Opinion Letter September 3, 1999) (copy enclosed), and that firefighter/EMS employees could not volunteer as tactical EMS medics for their employer's police department SWAT team (see Wage and Hour Opinion Letter August 19, 1999) (copy enclosed).
Your letter provides no specific information regarding whether state law and the Census treat the County A Department of Emergency Medical Services as a separate public agency, including whether its payroll retirement and other personnel systems are separate, and whether it may sue and be sued in its own name. Additionally, you provide no evidence concerning the extent to which the County A Fire and Rescue Department exercises day-to-day control, if at all, over the volunteer services provided to the County A Department of Emergency Medical Services. Consequently, we are unable to determine if the entities should be considered the same public agency. If the agencies are determined to be separate public agencies under the FLSA, it is not necessary to determine if the individuals perform the same type of services.
However, in the event the agencies were not separate, while your scenario provides that there are some differences in the type of services provided in each role, there is insufficient information on the total scope of services in each role to make a "same type of services" determination, and, consequently, we are unable to provide a definite response to this question for that reason also.
Q.15 Police Officer is employed by County A Bureau of Police, where he responds to medical emergencies, accidents, and fires as a first responder but provides no medical or life support. The Police Officer also volunteers for County A Fire and Rescue Department (a joint powers board of County A and City A) where he responds to medical emergencies, accidents and fires and provides medical and other life support.
A.15 Again, the determination of whether the police officer, who is a first responder, is a bona fide volunteer turns in part on whether the person is volunteering for the same public agency that employs the individual as a police officer and, if so, whether the volunteered services are the same as those the person is employed to provide. We refer you to the discussion of the factors to consider in making this determination as outlined in Wage and Hour Opinion Letter FLSA2003-2. Again, a "same type of services" determination can be made only after an examination of all the facts and circumstances of a particular case. We assume that, even though both agencies respond to the same types of emergencies, the Bureau of Police does not provide medical or life support services that the Fire and Rescue Department provides. It is our general position that the definition of "same type of services" typically allows for a determination that police and firefighters provide a different type of service, consistent with their different Dictionary ofOccupational Titles categories. As explained in Wage and Hour Opinion Letter FLSA2003-2, merely responding to the same emergencies, such as traffic *Page 12 
accidents and fire calls, or acting as a medical first responder on occasion will typically not change the inherent difference in the two occupations. Accordingly, while we believe, for the reasons cited, that the police officer described in your scenario probably may volunteer as a firefighter without incurring FLSA wage liability, without more information on the relationship of the agencies, we are constrained in providing a definitive answer on this question.
We are also enclosing a copy of Wage and Hour Opinion Letter July 7, 1999 that addresses issues very similar to those raised in this and your September 16, 2002 letter. This letter may provide further guidance to you and your members concerning the volunteer issue.
This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.
We trust you will find the above discussion and analysis responsive to your request.
 Sincerely,
 Alfred B. Robinson Jr.
 Acting Administrator
* Note: The actual name(s) was removed to preserve privacy inaccordance with 5 U.S.C. § 552(b)(7). *Page 13 
 ATTACHMENT
 November 5, 2004
 FLSA2004-19
Dear Name*,
This is in response to your letter dated December 1, 2000 written on behalf of the Name*. You request guidance under the FLSA concerning the ability of a Fire Captain to also volunteer as a Chaplain serving the same public employer.
The FLSA recognizes the generosity and public benefits of volunteering, and does not seek to pose unnecessary obstacles to bona fide volunteer efforts for charitable and public purposes. Please be assured that this Administration fully supports volunteerism and is committed to work to ensure that citizens are able to freely volunteer their services for charitable and public purposes consistent with the law. Wage and Hour Division (WHD) staff is prepared to work with and offer assistance to the municipality on FLSA compliance.
Section 3(e)(4)(A) of the FLSA and 29 CFR 553.101 and 553.103, copies enclosed, indicate that individuals are volunteers, not employees of a public agency, when they meet the following criteria:
 A. Perform hours of service for civic, charitable or humanitarian reasons without promise, expectation, or receipt of compensation for the services rendered. The statute clarifies that a volunteer performing such service can either receive no compensation or be paid expenses, reasonable benefits or a nominal fee to perform such services.
 B. Offer their services freely and without coercion, direct or implied, from the employer; and,
 C. Are not otherwise employed by the same public agency to perform the same services as those for which they propose to volunteer. In other words, individuals can qualify as volunteers if they either volunteer for different agencies or perform different services than they are otherwise employed to perform.
While your letter does not specifically address these issues, we will assume that the Fire Captain is volunteering for civic, charitable or humanitarian reasons without promise, expectation, or receipt of compensation. Further, we will assume the Fire Captain is volunteering freely, with no direct or implied coercion by the employer. Finally, it is apparent from your letter that the Fire Captain is seeking to volunteer for the Name*, also the employer.
The remaining question concerns whether or not the Fire Captain would be providing the same or similar services as those he or she is employed by the Name* to provide while performing services as a volunteer Chaplain.
A determination of whether the services that volunteers seek to provide are the "same type of services" they are employed to perform requires ". . . consideration of all the facts and circumstances in a particular case . . ." See 29 CFR 553.103(a). Among the facts the regulation states will be considered is how the volunteered services and the services which the volunteer is employed to provide are classified by the three digit categories of occupations in the Dictionary of Occupational Titles (DOT), published by the Employment and Training Administration (ETA). The DOT was recently superseded by the O*NET system, also published by ETA. Of equal weight to the DOT/O*NET, the Administrator will consider whether the volunteer services are "closely related to the actual duties performed or responsibilities assigned to the employee." Id.
 Name* has established a volunteer Chaplaincy Program. Under the program, Chaplains normally serve as volunteers and not City employees. You have enclosed a copy of the Name* Police Department General Order 96-1, which establishes the Chaplaincy Program, and which the Fire Department applies to its similar program. *Page 14 
A Chaplain must be ecclesiastic certified or ordained by a recognized religious body, and he or she must have a church or substantial congregation within the jurisdiction. The Chaplain performs a variety of tasks in his or her service to the department and community. The Chaplain counsels employees at their request; officiates at events such as funerals, retirements and award ceremonies; visits sick and injured personnel; assists in making death and injury notifications to employee families; and provides training to employees and their families as needed. The Chaplain also provides liaison services to the religious community and to the broader community during crisis or emergency situations.
Fire Captains, on the other hand, perform a much different set of tasks. Typically, the Fire Captain directs firefighters and rescue personnel to the scene of a fire alarm; assesses and reports on conditions at the scene; and assumes command of the firefighting and rescue operations until relieved by a senior officer. In addition, the Fire Captain supervises activities at the fire station; conducts orientation and drills for firefighting personnel; inspects buildings, facilities and equipment to ensure compliance with fire codes; investigates fires; make presentations about fire safety to community groups; and may perform functions related to arson investigations.
Both the Dictionary of Occupational Titles and the O*NET contain descriptions of occupations that closely track those of Fire Captain and Chaplain. See DOT 373.134-010 Fire Captain; DOT 120.107-010 Clergy Member (which includes Chaplain); O*NET 33-1021.01 Municipal Fire Fighting and Prevention Supervisor; and, O*NET 21-2011.00 Clergy. It is clear after reviewing the job descriptions for Fire Captain and Chaplain you provided with your letter and the DOT and O*NET treatment of these occupational categories that a Fire Captain and Chaplain are not providing the same or similar services. Therefore, assuming the other two criteria are met for establishing that an individual is a volunteer, the Name* may allow the Fire Captain to volunteer without compensation as a Chaplain without violating the FLSA.
I hope you will find the above discussion and analysis responsive to your request. We stand ready to work with you at any time to support the wonderful spirit of volunteerism that sustains this country.
This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances which would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have represented that this opinion is not sought by a party to pending litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.
 Sincerely,
 Alfred B. Robinson, Jr.
 Acting Administrator
 Enclosures
* The actual name(s) was removed to preserve privacy. *Page 15 
 ATTACHMENT
 FLSA2006-38
September 29, 2006
Dear Name*:
This is in response to your request for an opinion concerning the application of the Fair Labor Standard Act (FLSA) to firefighters who wish to switch from part-time employee status to volunteer status.
In a conversation with a member of my staff, your office advised that the Fire Protection District (District) employs part-time paid firefighters who work 8 to 16 hours per week, in addition to other individuals who volunteer their time. These part-time firefighters are paid $6.75 per hour and also work other part-time jobs in the community. Some of them eventually obtain full-time employment in fields other than firefighting and wish to continue their service with the fire department as volunteers.
The FLSA recognizes the generosity and public benefits of volunteering and does not pose obstacles to bona fide volunteer efforts for charitable and public purposes except in very narrow circumstances. With the 1985 FLSA amendments, Congress sought to ensure that true volunteer activities were neither impeded nor discouraged, while at the same time minimizing the potential for abuse or manipulation of the FLSA's minimum wage and overtime requirements through coercion or undue pressure on individuals to "volunteer" their services.
In this regard, an individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation, or receipt of compensation for the services rendered, is considered to be a volunteer during those hours. See 29
C.F.R. § 553.101 (a).[1] Under the legislative compromise that Congress reached in the 1985 FLSA amendments, however, an individual is not considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer. This limitation is found in the statutory definition of "employee." 29 U.S.C. § 203(e)(4)(A)(ii). Therefore, under the FLSA an employee of a public agency may volunteer without restriction to perform the same type of service for a different public agency, or may volunteer without restriction to perform a different type of service for the same public agency that employs him or her.
The FLSA and its implementing regulations do not prelude a firefighter who terminates part-time employment with a public agency from later
assuming a volunteer firefighter position, provided that the firefighter:
 1. Was not converted unilaterally by the employer to volunteer status in order to avoid the minimum wage provisions or overtime protection of the FLSA, see Krause v. Cherry Hill Fire Dist., 969 F. Supp. 270, 277-79 (D.N.J. 1997); *Page 16 
 2. Serves as a volunteer for civic, charitable, or humanitarian reasons without promise, expectation, or receipt of compensation, although expenses, reasonable benefits, or a nominal fee may be provided;
 3. Offers service freely and without coercion, direct or implied, from the agency; and
 4. Is not otherwise employed by the same public agency to provide the same services for which he or she volunteers.
See 29 C.F.R. § 553.101. These criteria should be applied on an individual basis to determine whether the circumstances indicate that a specific individual qualifies as a bona fide volunteer under the FLSA.
This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.
 Sincerely,
 Paul DeCamp
 Administrator
* Note: The actual name(s) was removed to preserve privacy inaccordance with 5 U.S.C. § 552(b)(7).
[1] Federal regulations address different scenarios regarding what constitutes "compensable hours of work" as follows:
Fire Protection and Law Enforcement Employees of Public Agencies Tour of Duty and Compensable Hours of Work Rules
§ 553.221 Compensable hours of work.
(a) The general rules on compensable hours of work are set forth in29 CFR Part 785 which is applicable to employees for whom the section 7(k) exemption is claimed. Special rules for sleep time (§ 553.222) apply to both law enforcement and firefighting employees for whom the section 7(k) exemption is claimed. Also, special rules for meal time apply in the case of firefighters (§ 553.223). Part 785 does not discuss the special provisions that apply to State and local government workers with respect to the treatment of substitution, special details for a separate and independent employer, early relief, and work performed on an occasional or sporadic and part-time basis, all of which are covered in this subpart.
(b) Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.
(c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work. For example, where a police station must be evacuated because of an electrical failure and the employees are expected to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable. The employees in this example cannot use the time for their personal pursuits.
(d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.
(e) Normal home to work travel is not compensable, even where the employee is expected to report to work at a location away from the location of the employer's premises.
(f) A police officer, who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during the travel time even where the radio must be left on so that the officer can respond to emergency calls. Of course, the time spent in responding to such calls is compensable.
(g) The fact that employees cannot return home after work does not necessarily mean that they continue on duty after their shift. For example, firefighters working on a forest fire may be transported to a camp after their shift in order to rest and eat a meal. As a practical matter, the firefighters may be precluded from going to their homes because of the distance of the fire from their residences.
[2] 29 U.S.C.A. § 203(g) states that the term "employ" includes "tosuffer or permit to work."
[3] R.S. 33:1991 (A) (1) states:
The word "fireman", as used in this Subpart includes all persons employed or engaged full-time by municipalities or municipal fire departments, parishes or parish fire departments, or fire protection districts for firefighting or fire prevention duties and services, as well as employees of nonprofit corporations under contract with a fire protection district or other political subdivision to provide such services, including operators of the fire-alarm system when such operators are members of the regularly constituted fire department. The word "fireman" does not include carpenters, storekeepers, machinists, clerks, building hazard and similar inspectors, physicians, or other non-firefighting employees detailed for such special duties, nor does the word "fireman", except as otherwise provided in this Subsection, include employees of privately owned or operated firefighting or fire prevention services.
[4] 29 USC § 213(b)(20) provides "the provisions of section 207 this title shall not apply with respect to. . . . (20) any employee of a public agency who in any workweek is employed in fire protection activities or any employee of a public agency who in any workweek is employed in law enforcement activities (including security personnel in correctional institutions), if the public agency employs during the workweek less than 5 employees in fire protection or law enforcement activities, as the case may be . . .".
[5] Volunteers § 553.101 "Volunteer" defined.
(a) An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours. Individuals performing hours of service for such a public agency will be considered volunteers for the time so spent and not subject to sections 6, 7, and 11 of the FLSA when such hours of service are performed in accord with sections 3(e)(4) (A) and (B) of the FLSA and the guidelines in this subpart.
(b) Congress did not intend to discourage or impede volunteer activities undertaken for civic, charitable, or humanitarian purposes, but expressed its wish to prevent any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to "volunteer" their services.
(c) Individuals shall be considered volunteers only where their services are offered freely and without pressure or coercion, direct or implied, from an employer.
(d) An individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.
[6] 29 USC 207(k) states: Employment by public agency engaged in fire protection or law enforcement activities No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if — (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days.
[7] Our state law adopts the federal schedule at R.S. 33:1994(A), providing:
A. . . . . . In the event that such firefighters are subsequently excluded from the overtime compensation provisions of the Fair Labor Standards Act, any firefighters having a work period of at least seven but not more than twenty-eight consecutive days shall receive overtime compensation at the rate of one and one-half times his usual salary, to be determined by reducing his average monthly salary to an hourly scale, for all hours worked in excess of the following maximum hours standards: Work Period (days)

Work Period (days) Maximum Hours Work Period (days)(cont'd) Maximum Hours(cont'd)
 28 212 17 129
 27 204 16 121
 26 197 15 114
 25 189 14 106
 24 182 13 98
 23 174 12 91
 22 167 11 83
 21 159 10 76
 20 151 9 68
 19 144 8 61
 18 136 7 53

[8] 29 USC 207 (p)(1) provides:
(1) If an individual who is employed by a State, political subdivision of a State, or an interstate governmental agency in fire protection or law enforcement activities (including activities of security personnel in correctional institutions) and who, solely at such individual's option, agrees to be employed on a special detail by a separate or independent employer in fire protection, law enforcement, or related activities, the hours such individual was employed by such separate and independent employer shall be excluded by the public agency employing such individual in the calculation of the hours for which the employee is entitled to overtime compensation under this section if the public agency — (A) requires that its employees engaged in fire protection, law enforcement, or security activities be hired by a separate and independent employer to perform the special detail, (B) facilitates the employment of such employees by a separate and independent employer, or (C) otherwise affects the condition of employment of such employees by a separate and independent employer.
[9] 29 USC 207 (p)(2) provides:
(2) If an employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency undertakes, on an occasional or sporadic basis and solely at the employee's option, part-time employment for the public agency which is in a different capacity from any capacity in which the employee is regularly employed with the public agency, the hours such employee was employed in performing the different employment shall be excluded by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.
[10] 29 USC § 207 (p)(3) provides:
(3) If an individual who is employed in any capacity by a public agency which is a State, political subdivision of a State, or an interstate governmental agency, agrees, with the approval of the public agency and solely at the option of such individual, to substitute during scheduled work hours for another individual who is employed by such agency in the same capacity, the hours such employee worked as a substitute shall be excluded by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.
[11] Volunteers
§ 553.103 "Same type of services" defined.
(a) The 1985 Amendments provide that employees may volunteer hours of service to their public employer or agency provided "such services are not the same type of services which the individual is employed to perform for such public agency." Employees may volunteer their services in one capacity or another without contemplation of pay for services rendered. The phrase "same type of services" means similar or identical services. In general, the Administrator will consider, but not as the only criteria, the duties and other factors contained in the definitions of the 3-digit categories of occupations in the Dictionary of Occupational Titles in determining whether the volunteer activities constitute the "same type of services" as the employment activities. Equally important in such a determination will be the consideration of all the facts and circumstances in a particular case, including whether the volunteer service is closely related to the actual duties performed by or responsibilities assigned to the employee.
(b) An example of an individual performing services which constitute the "same type of services" is a nurse employed by a State hospital who proposes to volunteer to perform nursing services at a State-operated health clinic which does not qualify as a separate public agency as discussed in § 553.102. Similarly, a firefighter cannot volunteer as a firefighter for the same public agency.
(c) Examples of volunteer services which do not constitute the "same type of services" include: A city police officer who volunteers as a part-time referee in a basketball league sponsored by the city; an employee of the city parks department who serves as a volunteer city firefighter; and an office employee of a city hospital or other health care institution who volunteers to spend time with a disabled or elderly person in the same institution during off duty hours as an act of charity.
[12] 29 U.S.C.A. § 203(e)(4)(A) provides:
(4)(A) The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency, if — (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and
(ii) such services are not the same type of services which the individual is employed to perform for such public agency.
[13] 29 U.S.C.A. § 203(e)(4)(B) provides:
(B) An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency may volunteer to perform services for any other State, political subdivision, or interstate governmental agency, including a State, political subdivision or agency with which the employing State, political subdivision, or agency has a mutual aid agreement.
[1] In a conversation with our staff subsequent to your letter, you withdrew original questions 7, 8, 10, 12, and 13 and replaced them with two new questions. These new questions are reproduced here as new questions 7 and 8. There are no longer any questions 10, 12, or 13.
[2] In a conversation with our staff subsequent to your letter, you withdrew questions 7, 8, 10, 12, and 13 and replaced them with two new questions. These new questions are reproduced here as new questions 7 and 8.
[3] The Department has withdrawn Wage and Hour Opinion Letters September 17, 1999, April 2, 1992, and July 15, 1988 to the extent they are inconsistent with the interpretation of nominal fee in this opinion.
[1] Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov.